No. 3307

Second Circuit

SHEARING v. LA. RY. & NAV. CO.

(March 12, 1929. Opinion and Decree.)
(April 5, 1929. Rehearing Refused.)

Phanor Breazeale, of Natchitoches, attorney for plaintiff, appellee.

Rusca and Cunningham, of Natchitoches, and Wise, Randolph, Rendall and Freyer, of Shreveport, attorneys for defendant, appellant.

### STATEMENT OF THE CASE.

REYNOLDS, J. Plaintiff sued defendant for $351.29 with legal interest thereon from judicial demand.

He alleged that it was a common carrier and that on March 22, 1919, he delivered to it at Campti, Louisiana, eight bales of cotton in good condition to be by the defendant transported to New Orleans, Louisiana, and there delivered to Norman Mayer & Company, and that when the cotton was delivered to the consignee it was

"found to be so water-logged and damaged as to require them (the eight bales) to be sent to the pickery, at a loss of twelve hundred fifty-six (1256) pounds worth from thirty-one (31) cents to thirty-two and a quarter (32¼) cents per pound, and said 1256 pounds had to be sold, seven hundred ninety-nine pounds thereof at five (5c) cents a pound, and four hundred fifty-seven (457) pounds thereof at

three cents (3c) a pound. After paying the picking charges the net loss to your petitioner is the sum of three hundred fifty-one and 29-100 ($351.29) dollars, which the said railroad company owes with five per cent. (5%) interest thereon from judicial demand."

Defendant filed an exception to the jurisdiction of the court *ratione personae*, and, on trial, the exception was overruled, and thereupon defendant, reserving the benefit of the exception, answered admitting receipt of the eight bales of cotton and the contract of carriage and denying the other allegations of the petition. Further answering it alleged

"that the cotton, when delivered to your petitioner, although, superficially, it might have appeared to be in good order, was not in good order, and that said cotton was wet while being held by the shipper in his own yards and that he has his own negligence to blame for the damage."

On these issues the case was tried and there was judgment in favor of the plaintiff and against the defendant for the amount sued for and the defendant appealed.

### OPINION.

### ON THE EXCEPTION TO THE JURISDICTION.

The exception was not adverted to by defendant before this court and we therefore assume that it was abandoned.

### ON THE MERITS.

The money value of the damage sustained by plaintiff is fairly established by the evidence and the only serious question for our consideration is whether the cotton was damaged while it was in defendant's possession.

The plaintiff testified:

"Q. Where did you ship the cotton from?

"A. Campti.

"Q. What was its condition when you delivered it to the railroad and they gave you a clean bill of lading for it?

"A. Good.

"Q. What do you mean by that?

"A. It was dry; free from wet and damage.

\* \* \*

"Q. How did you keep it?

"A. Under a shed.

"Q. Practically free from the weather?

"A. Yes, sir.

"Q. Off the ground?

"A. Yes, sir.

\* \* \*

"Q. What was the character of the weather when you hauled it to Campti?

"A. Good.

"Q. Do you know when you delivered it?

"A. The bill of lading was issued the day I delivered it.

\* \* \*

"Q. Are you quite sure that you kept the cotton for several months in your shed and absolutely protected?

"A. Yes, sir.

"Q. Did the shed protect the cotton absolutely from the weather while you had it under there?

"A. Yes, sir.

\* \* \*

"Q. Where were the eight bales stored?

"A. Under the shed where I was living.

"Q. Under one shed?

"A. I put some in the house across the road.

\* \* \*

"Q. This eight bales were free from any damage whatever?

"A. Yes, sir."

This testimony is corroborated by that of W. A. Grappe, who testified:

"Q. That cotton was stored in a shed on his place?

"A. The cotton was made in 1918 and shipped in 1919.

"Q. Where was the cotton stored?

"A. The cotton was at his place under a shed.

"Q. At Campti?

"A. No; at his place; I had some cotton in there myself.

"Q. How was it stored out there?

"A. He had a good shed on it.

"Q. A good shed?

"A. Yes; and he had some in a house on the place out there, I think 25 or 30 bales."

The bill of lading issued by defendant to plaintiff acknowledges the cotton to be "in apparent good order" and is dated March 22, 1919.

M. E. Wurzburger testified that he was a clerk in the employ of Norman Mayer & Company, the consignee of the cotton, and that the cotton was delivered to the consignee by defendant on April 12, 1919, "in a wet and damaged condition, and therefore we had to send same to the pickery to be reconditioned to make same merchantable."

He further testified that the net loss on the value of the cotton resulting from its being wet was $351.29 and he detailed how this result was arrived at.

"Carriers and watermen are liable for the loss or damage of the things intrusted to their care, unless they can prove that such loss or damage has been occasioned by accidental and uncontrollable events."

Civil Code, article 2754.

Lehman, Stern & Co. vs. M. L. & T. R. & S. S. Co., 115 La. 1, 38 So. 873, 70 L. R. A. 562, 112 Am. St. Rep. 259, 5 Ann. Cas. 818.

Powell-Myers Lumber Co. vs. T. & G. Ry. Co., 2 La. App. 164.

It being shown that the cotton was in good condition when delivered to defendant by plaintiff and damaged when delivered by defendant to the consignee and it not appearing that the damage resulted from accidental and uncontrollable events, we conclude that the defendant was liable.

But defendant insists that it was not shown that the cotton delivered by defendant to the consignee was the same as that received by it from the plaintiff. If the cotton delivered was not that for which it issued the bill of lading defendant should have alleged and proved it instead of admitting that it was the same, as we think it did by the following paragraph of its answer:

"Further answering, defendant avers that the cotton, when delivered to your *petitioner* (meaning, of course, defendant), although superficially it might have appeared to be in good order, was not in good order, and alleges that said cotton was wet while being held by the shipper in his own yards, and that he has his own negligence to blame for the damage."

The evidence satisfies us that the judgment appealed from is correct, and accordingly it is affirmed.